### BOONE *v.* PERRIGO.

VENDOR AND PURCHASER—LAND CONTRACTS—CONDITION PRECEDENT —BREACH OF CONTRACT—SPECIFIC PERFORMANCE.

Where the securing of the release of liens by the vendee in a land contract was a condition precedent to the giving of the deed to it by the vendor, who had secured title to the premises from the owner, who was indebted to it and to others, failure by the vendee to secure, within the time limited, the release of said liens amounted to

a breach of the contract excusing performance by the vendor, and the vendee was properly denied specific performance.

Appeal from Wayne; Johnson (Clayton C.), J., presiding. Submitted October 5, 1921. (Docket No. 16.) Decided December 21, 1921.

Bill by William H. Boone against Elmer E. Perrigo and others to foreclose a mechanic's lien. The defendant Acme Lumber Company filed a cross-bill against defendant Ternes Coal & Lumber Company for specific performance of a contract. From a decree dismissing the cross-bill, the Acme Lumber Company appeals. Affirmed.

*Edmund E. Shepherd,* for appellant.

*Payne & Payne,* for appellee.

STEERE, C. J. This litigation arose in connection with the erection of a house by defendants Perrigo on a lot in Highland Park, to which they held title under a warranty deed from V. C. Fry and wife dated May 9, 1917. Contemporaneous with their construction of this house they became swamped with indebtedness and various creditors took steps to collect their claims by proceeding against the property. The instant case was commenced by plaintiff Boone to foreclose a lien for material furnished, and apparently various interested parties by reason of claims against the property were made defendants. He was granted a decree of foreclosure of his lien amounting to $963.69, which is not here contested, and the decree rendered by the court states that other liens against the property were vacated under the statute by defendant Ternes Coal & Lumber Company filing a proper bond. Cross-plaintiff Acme Lumber Company filed a cross-

bill against cross-defendant Ternes Coal & Lumber
Company, asking relief under a contract between
themselves relating to this property, which was dis-
missed by the court and the Acme Lumber Company
has appealed from that portion of the decree. These
two corporations are the only parties interested in
this appeal and are respectively referred to in briefs
of counsel as plaintiff and defendant.

It is shown that prior to May 26, 1917, one Peter
Patterson held a mortgage upon the property in the
sum of $3,100 with accumulated interest, there were
various claims against it for labor and materials and
the Perrigos were also indebted to defendant Ternes
Coal & Lumber Company in excess of $2,600 for ma-
terials previously furnished them. Upon that date
they executed and delivered to the Ternes Company
a warranty deed of the premises for a variously stated
price between $7,200 and $7,850 including Patterson's
mortgage. On July 30, 1917, the Acme Company
levied an attachment upon the property in an action
at law brought against the Perrigos to recover the
amount of an indebtedness of $1,006.18 for material
claimed by it. An attempt was made by the Perrigos
to sell the property for $9,000 or thereabouts by ar-
rangement with the Ternes Company, in which they
were unsuccessful, and on September 10, 1917, the
Ternes Company sold the same under contract to
parties named Curtiss for $7,950. Thereafter various
proceedings were had which resulted, on February 7,
1918, in a contract between plaintiff and defendant
providing, so far as material here, as follows:

"In consideration of the sum of one (1) dollar and
other valuable considerations, paid by the Acme Lum-
ber Company * * * to the Ternes Coal & Lum-
ber Company * * * to apply on the purchase
price of the land contract, in which Francis C. S.
Curtiss (and others) * * * agree to purchase
217 Mich.—4.

from the Ternes Coal & Lumber Company, for the sum of seventy-nine hundred fifty ($7,950) dollars, said premises being described as follows: (Description of premises.)

"Ternes Coal & Lumber Company agrees to sell and the Acme Lumber Company agrees to purchase the above described land contract for the sum of seventy-five hundred sixty-six dollars, six cents ($7,566.06) on the following terms and conditions: Twenty-six hundred fifty (2,650) dollars in cash to be derived from payments to be made by the vendees; thirty-seven hundred (3,700) dollars by the Acme Lumber Company assuming the first mortgage now held by Peter Patterson or the Investment Mortgage Company or their assigns; eight hundred twenty-six dollars, three cents (826.03) by the Acme Lumber Company assuming lien number 17,299, claimed by William F. (H) Boone; two hundred forty-two dollars, three cents (242.03) by the Acme Lumber Company assuming lien number 17,016 claimed by the McDonald Coal & Brick Company and one hundred forty-eight (148) dollars by the Acme Lumber Company assuming lien number 17,455 claimed by William E. Brady Company.

"The said Acme Lumber Company hereby agrees to settle all lien claims or to secure the said Ternes Coal & Lumber Company from any obligation to pay said liens by furnishing a bond or otherwise within fifteen days from date of contract.

"Ternes Coal & Lumber Company agrees to execute a warranty deed to the above described premises subject to the encumbrances above described upon the payment due it from the proceeds of the down payment to be made on the said land contract as above written.

"Ternes Coal & Lumber Company further agrees to pay the commission due the Lambracht Kelly Company for making the sale of such property to Francis C. S. Curtiss (and others). Any and all taxes now due upon the premises are to be paid by the Ternes Coal & Lumber Company or by the vendees."

On August 9, 1917, plaintiff's attachment on the property, of July 30, 1917, in the action against the

Perrigos was released. Its amended cross-bill against defendant on which the parties went to hearing asked specific performance of this contract of February 7, 1918, now admitted to have been a mistaken remedy as defendant had long before the bill was filed conveyed the property subject to Patterson's mortgage to the Curtisses on their payment of the balance in full to it pursuant to the terms of their land contract of September 10, 1917. Upon the hearing plaintiff was permitted to file a further amended cross-bill "to conform to the proofs" as was claimed, alleging that by reason of its wrongfully breaching said contract defendant was liable to plaintiff "for such compensatory damages as it might suffer and sustain by reason of the aforesaid breach," and an accounting was asked with prayer that plaintiff be decreed such sum as the same disclosed its due out of money received by defendant from sale of the property.

Claiming plaintiff first breached and then abandoned the contract defendant denied liability and asked dismissal of plaintiff's cross-bill, which was granted. The principal litigated question upon the facts was which party, if either, first breached the contract. By it plaintiff was obligated to settle all lien claims against the property or secure defendant from any obligation to pay them by a bond or otherwise within 15 days. Contemporaneous with the contract it gave defendant its bond with certain of its stockholders as sureties for $2,000 to settle all liens, or furnish defendant within 15 days a satisfactory bond to protect it "from any obligation to pay said liens." Plaintiff then attempted to secure discharge of the liens on the property, as provided by statute, by filing with the county clerk bonds signed by its president and secretary as sureties. But its yard was then incumbered by mortgage and the officers proposed as sureties were unable to qualify as owners of real estate, resulting in

the bonds being rejected by the county clerk upon objection of the several lien claimants. A second mortgage for $2,000 on plaintiff's yard was then given defendant, which does not appear in the record but as quoted from by plaintiff's counsel was "according to the terms of a certain bond." In explanation of that transaction plaintiff's secretary testified that after attempting unsuccessfully "to bond off these liens" he went to defendant's treasurer, Mr. Ternes, and explained the circumstances in reply to which—

—"he said, 'we will accept a surety bond' and I agreed to give him mortgage to protect him; we did give him a mortgage. I delivered this mortgage to William B. Ternes. I did not at that time get a deed from him. After I delivered the contract, mortgage and bond he said he would take it up with the officers of the company, and get the deed prepared and delivered to us, said all deeds had to be signed by A. P. Ternes and George Ternes, the secretary. On several occasions afterwards I demanded the deed; two or three days after I delivered the bond and mortgage."

Plaintiff did not settle all or any lien claims against the property within the 15 days, or later, nor otherwise than as above stated secure defendant from any "obligation to pay said liens." Defendant had contracted to sell the property to the Curtisses free of incumbrance, except the Patterson mortgage, and was obliged to protect it against those liens, which it did after expiration of the 15 days time in which plaintiff undertook to do so and failed by procuring and filing with the county clerk, on March 4, 1918, bonds it obtained of a surety company. On June 28, 1918, defendants discharged of record and canceled the $2,000 second mortgage on plaintiff's yard at the latter's request.

After cancellation of this mortgage plaintiff instituted another attachment proceeding to recover its claim against the Perrigos and levied an attachment

on the property involved here. That action was yet pending in the Wayne county circuit when this suit was heard. Plaintiff bases its right to relief on the claim that it had complied with all requirements on its part when its secretary had "delivered the contract mortgage and bond" to defendant's treasurer who, as the former testified, then said he would have a deed prepared and delivered; that when thereafter, about February 17, 1918, demand for a deed was made and refused defendant breached the contract.

Defendant contends that no promise was made by its treasurer or any one else in its behalf to give a deed until full performance by settling the lien claims against the property, which it urged plaintiff to do when notified of its failure, that the bond and mortgage given were not performance but only security to perform; that plaintiff neither settled the lien claims nor furnished bonds which released them, and defendant was compelled to assume the indebtedness, furnish security bonds to obtain their discharge and protect the property after plaintiff's failure to fulfill within the required time, and admits refusal to deliver the deed, about March 4, 1918, because plaintiff had breached the contract.

We think it fairly appears by the contract that release of the liens was a condition precedent to giving the deed, and the parties themselves so understood it. Plaintiff's secretary, who conducted the negotiations and represented plaintiff in the transactions, said on cross-examination, "I understood that under this agreement we were to furnish a bond to release this mechanic's lien. * * * We did not furnish any bond that was acceptable to the lien holders." When he went to the defendant's treasurer in explanation the latter told him they would accept a surety bond, but plaintiff did not furnish one. The secretary says he gave him a mortgage to "protect him." The testi-

mony is somewhat in conflict as to things said in that connection, then and later, but the evidence is convincing that plaintiff failed to effect any results beneficial to defendants in performance of its material obligation to relieve the property of the mechanics' liens which imminently burdened it. The proofs are persuasive that defendant waived nothing but was insistent on plaintiff freeing the property of the liens as contemplated by their contract. When defendant was compelled to do so itself on plaintiff's admitted default the latter had breached a substantial intendment of the contract. That plaintiff so recognized it is suggested by the fact that it asked and obtained from defendant a discharge of the mortgage, thereafter, on September 17, 1918, commenced an action at law by attachment against the Perrigos and caused the writ to be levied upon the property involved here.

The trial court was also of the opinion that by commencing its attachment proceedings against the Perrigos and levying an attachment upon this land plaintiff by election of that remedy was precluded from subsequently maintaining this suit.

Against this plaintiff's counsel insist that the two remedies against different parties are not inconsistent but alternative and concurrent, in which case all available remedies against any persons liable may be pursued until satisfaction is obtained, and therefore the doctrine of election of remedies has no application. Such is undoubtedly the law where the remedies are consistent. On the other hand:

"Where a party has grounds to bring separate actions against different persons, and the maintenance of one necessitates the allegation of a fact, or the assumption of a position, inconsistent with, or repugnant to, the maintenance of another, he is bound by his election, and cannot proceed against the other." 20 C. J. p. 17.

The attachment case apparently proceeds on the assumption the Perrigos owned the attached property, while the instant case is planted on the proposition that defendant was the owner and breached the contract by refusing to deed the property to plaintiff, theories not readily reconcilable so far as the fact of ownership of the property is concerned. One test of consistency is said to be "Can the facts necessary to support one remedy coincide with the facts necessary to support the other?" 20. C. J. p. 11.

We do not, however, find that a proper disposition of this case demands determination of the rather technical question of co-existing but inconsistent remedies. Plaintiff's conduct regarded by the trial court of that import is at least persuasive of its recognition that it had defaulted in performance of the contract and the same was at an end, for soon after defendant on demand refused to deed it the property, because it had breached the contract by not protecting defendant from obligation to care for the liens, plaintiff in seeking acknowledgment asked and was given a cancellation of the very mortgage it had claimed protected defendant and operated as performance and began an action at law to recover its claim against other parties attaching this property as theirs.

The trial court rightly held that when this suit was begun plaintiff was not entitled to the relief asked in its cross-bill against defendant under the contract in question.

The decree will therefore stand affirmed, with costs to defendant.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.